IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 09-00207  DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RODNEY D. KING, and      [01] | ) | |
| SHARON-MAE NISHIMURA [02] | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
TESTIMONY OF A GOVERNMENT EXPERT AT TRIAL

On March 16, 2010, the Court heard Defendant Rodney King's

Motion in Limine to preclude testimony of a government expert at trial and

conducted an evidentiary hearing pursuant to Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993) (the "Daubert hearing").  Edward G.

Caspar, Trial Attorney, U.S. Department of Justice, and Darren W. K. Ching,

Assistant U.S. Attorney, appeared at the hearing on behalf of the Government;

Matthew C. Winter, Assistant Federal Defender, appeared at the hearing on behalf

of Defendant King ("Defendant").  After reviewing the motion and the supporting

and opposing memoranda, the Court DENIES Defendant's Motion.

<u>BACKGROUND</u>

Many of the facts of this case have been described in a previous order by this Court.  (<u>See</u> Doc. # 114.)  Accordingly, only facts relevant to the assessment of the Government's proposed expert witness are recounted.

On May 20, 2009, a federal grand jury returned a six-count indictment against Defendant and co-defendant Nishimura.  (Doc. # 1.)  On September 23, 2009, the Government filed a superseding indictment charging Defendant with 13 counts including: (Counts 1-4, 9-10) sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a), (b); (Counts 5-6) sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a), (b) and 1594(a) and 2; (Counts 7-8) sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a), (b); (Counts 11-12) sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(2), 1591(b)(2), and 3559(e); and (Count 13) conspiracy to engage in sex trafficking, in violation of 18 U.S.C. § 1591.  (Doc. # 35.)  On September 30, 2009, Defendant entered a plea of not guilty.  (Doc. # 44.)

On January 14, 2010, the Government filed a second superseding indictment charging Defendant with Counts 1-4 and 7-12, in violation of 18 U.S.C. § 1591, Counts 5-6, in violation of 18 U.S.C. §§ 1594, 1591; and Count 13, in

violation of 18 U.S.C. § 371.  (Doc. # 64.)  On January 15, 2010, Defendant entered a plea of not guilty.  (Doc. # 70.)

On March 1, 2010, Defendant filed the instant Motion to preclude testimony of a government expert at trial and conduct an evidentiary hearing pursuant to <u>Daubert</u>.  ("Mot.," Doc. # 113.)  On March 8, 2010, the Government filed its response in opposition to Defendant's Motion.  ("Opp'n," Doc. # 123.)  In the instant case, the  Second Superseding Indictment ("Indictment") charges Defendant with several counts arising out of his role as an alleged pimp.  For Counts 1-6, 9, and 10 of the Indictment, the Government must prove beyond a reasonable doubt that the victims identified in the Indictment prostituted themselves on behalf of the Defendant as their pimp because of force, fraud, and coercion.  (<u>See</u> Indictment, Counts 1-6, 9, 10.)

On March 16, 2010, this Court conducted an evidentiary <u>Daubert</u> hearing on the Motion.  The Government presented Dr. Sharon Cooper, a medical doctor.  Dr.  Cooper testified as to her qualifications for the Court.

STANDARD OF REVIEW

A trial court has "broad latitude" in determining whether an expert's testimony is reliable and in deciding how to determine the testimony's reliability. <u>Mukhtar v. Cal. State Univ.</u>, 299 F.3d 1053, 1064 (9th Cir. 2002) (citing <u>United</u>

States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000); see also Kumho Tire Co. v.

Carmichael, 526 U.S. 137, 152 (1999).  The party proposing the expert witness has

the burden of establishing by a preponderance of the evidence the expert's

admissibility.  See Fed. R. Evid. 702, Advisory Committee Notes to 2000

Amendments ("[T]he admissibility of all expert testimony is governed by the

principles of Rule 104(a).  Under that Rule, the proponent has the burden of

establishing that the pertinent admissibility requirements are met by a

preponderance of the evidence."); see also Cooper v. Brown, 510 F.3d 870, 942

(9th Cir. 2007) (citations omitted).

DISCUSSION

Defendant moves to preclude testimony at trial from a Government

expert witness, Dr. Sharon Cooper, under Rules 402, 403, and 702 of the Federal

Rules of Evidence and under the Fifth and Sixth Amendments to the United States

Constitution because Dr. Cooper's testimony allegedly "would deprive the

defendant of his rights to due process and a fair trial." (Mot. at 3.)  Defendant also

moves for exclusion of Dr. Cooper's testimony under Rule 16 of the Federal Rules

of Criminal Procedure because the Government allegedly failed to provide the

materials required by the rule.  (Id. at 4.)

4

The Government states that it intends to call Dr. Cooper as an expert on "pimping" regarding three general topics:

> (1) the typical means of targeting and recruitment of adult and adolescent minor victims, (2) information about the ways that pediatric development, family dysfunction, and the use of drugs can make adult and adolescent minor victims more susceptible to influence by sex traffickers, and (3) common ways that sex traffickers use force and coercion to maintain control over the victims' actions and to prevent them from leaving the relationship.

(See Mot., Ex. A.)  Defendant argues that Dr. Cooper does not have the necessary qualifications or expertise to testify regarding these topics and, moreover, that she is antagonistic toward pimps.  (Mot. at 2.)  Defendant also argues that the first and third topics "constitute little else than testimony profiling pimps who run sex trafficking organizations[.]" (Id.)

I.    Expert Witness Testimony Under Rule 702

Pursuant to Federal Rule of Evidence 702, an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[1]  District courts perform a

---

[1] Federal Rule of Evidence 702 provides, in its entirety:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient

gatekeeping role to prevent unreliable expert testimony from reaching the jury.

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) ("Daubert I").

Whether the expert is appropriately qualified, whether her testimony is relevant,

and whether her testimony is reliable are all distinct inquiries under Rule 702.  See

id. at 591 (noting that relevancy is distinct from reliability); Mukhtar, 299 F.3d at

1066 n. 11 (noting that whether an expert is properly qualified is distinct from

whether expert testimony is reliable).

Rule 702 "contemplates a broad conception of expert qualifications."

Thomas v. Newton Intern. Enterprises, 42 F.3d 1266, 1269 (9th Cir. 1994).  "As

the terms of the rule state, an expert may be qualified either by 'knowledge, skill,

experience, training, or education.'" Id. (quoting Fed. R. Evid. 702).  However, any

opinion testified to by an expert must fall within his or her area of expertise,

whatever that expertise may be and howsoever it may have been acquired.  See

White v. Ford Motor Co., 312 F.3d 998, 1008–1009 (9th Cir. 2002) ("A layman,

which is what an expert witness is when testifying outside his area of expertise,

---

facts or data, (2) the testimony is the product of reliable
principles and methods, and (3) the witness has applied
the principles and methods reliably to the facts of the
case.

ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion.")

Once qualified, an expert may testify within her area of expertise so long as the expert's testimony "is both relevant and reliable." Cooper, 510 F.3d at 942 (citation omitted); see also Daubert I, 509 U.S. at 589.  In carrying out this responsibility, a court has discretion and flexibility in determining what evidence is relevant, reliable, and helpful to the trier of fact.  See United States v. Cordoba, 104 F.3d 225, 228 (9th Cir. 1997) ("District Courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in Daubert [I].") (citation omitted).

The Ninth Circuit has articulated a two-prong analysis for admissibility of a qualified expert's testimony.  First, the proffered testimony must be reliable, i.e., the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science."  Daubert v. Merrell Dow Pharm., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (citation and quotation signals omitted).  Second, the testimony must meet the "fit" requirement of relevancy, i.e., "it logically advances a material aspect of the proposing party's case."  Id.  A court's determination of relevancy

7

"must be 'tied to the facts' of [the] particular case.'" <u>Cooper</u>, 510 F.3d at 942

(quoting <u>Kumho Tire</u>, 526 U.S. at 150) (internal quotation signals omitted).

In determining reliability, the focus is on the expert's "principles and

methodology, not on the conclusions that they generate." <u>Daubert I</u>, 509 U.S. at

594-95.  Rule 702 "demands that expert testimony relate to scientific, technical or

other specialized knowledge, which does not include unsubstantiated speculation

and subjective beliefs." <u>Cooper</u>, 510 F.3d at 942  (quotations and citations

omitted).  Although not an exclusive list, factors for a trial court to consider in

determining reliability include: (1) whether the theory, technique or method used

by the expert to form her opinion can or has been tested; (2) the known or potential

rate of error in the expert's theory, technique or method; (3) whether the theory,

technique or method has been subjected to peer review and publication; (4)

whether there are standards controlling the theory, technique or method's

operation; and (5) the general acceptance of the theory, technique or method within

the relevant community.  <u>See id.</u> at 942-43; <u>United States v. Prime</u>, 431 F.3d 1147,

1152 (9th Cir. 2005).  Not all of these factors, however, may be applicable in a

given case. <u>Kumho Tire, Co.</u>, 526 U.S. at 151.  For example, in some cases

involving drug trafficking or alien smuggling organizations, the Ninth Circuit has

noted that an expert's training and experience may provide sufficient information

to determine the reliability of his testimony.  <u>See</u>, <u>e.g.</u>, <u>United States v. Lopez-Martinez</u>, 543 F.3d 509, 515 (9th Cir. 2008); <u>United States v. Mejia-Luna</u>, 562 F.3d 1215, 1219 (9th Cir. 2009).

The second inquiry, the "fit" requirement, is directed "primarily to relevance."  <u>Daubert I</u>, 509 U.S. at 591.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." <u>Id.</u> (internal quotations omitted).  However, the "fit" requirement is not merely an reiteration of the general relevancy requirement under Rule 402.  <u>Daubert II</u>, 43 F.3d at 1321 n.17.  Instead, such a determination is meant to take into account that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."  <u>Daubert I</u>, 509 U.S. at 595 (citation and quotation signals omitted).  "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that [the evidence] speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury."  <u>Daubert II</u>, 43 F.3d at 1321 n.17.

A.    Qualifications

Rule 702 requires an expert witness to be qualified "by knowledge, skill, experience, training, or education . . . ." in a particular area or field in order to testify as an expert in that area or field.  Fed. R. Evid. 702.  Defendant argues that Dr. Cooper is not "the right expert to provide profiling testimony on pimps and sex trafficking organizations, even if such testimony might be otherwise admissible." (Mot. at 2.)  The Government, however, states that Dr. Cooper's knowledge, skill, experience, training, and education qualifies her as an expert on the dynamics of the pimp-prostitute relationship.  (Opp'n at 2.)

From her curriculum vitae, Dr. Cooper has developed her expertise through her extensive experience and training as a developmental and forensic pediatrician.  (Mot., Ex. B at 1.)  Dr. Cooper has practiced in pediatrics since her residency in July 1976 and has worked seventeen years with the Army and the last thirteen years on staff at the University of North Carolina, Chapel Hill, Department of Pediatrics.  (<u>Id.</u> at 2.)  Starting from very early on in her career, Dr. Cooper focused on abused children.  (<u>Id.</u> at 4.)  Dr. Cooper continues to treat patients, including children, who have been abused, neglected, and sexually exploited and to write and present extensively about the sexual exploitation of children.  (<u>See</u> <u>id.</u> at 3-62.)

10

Dr. Cooper's curriculum vitae and testimony evidence that she has presented at numerous national and international conferences in the area of child sexual exploitation and human trafficking, including for the Royal Canadian Mounted Police, the Russian parliament (the Federal Assembly of Russia), and twice before Congress. Dr. Cooper testified that she has authored numerous multiple chapters for books and training materials on sexual exploitation, and she is the lead editor of a two-volume, 1400 page treatise on child sexual exploitation in which she selected the works submitted and participated in the peer review process. See Cooper, et al., Medical, Legal, and Social Science Aspects of Child Sexual Exploitation, a Comprehensive Review of Pornography, Prostitution, and Internet Crimes, G.W. Med. Pub., Inc. (2005).

Dr. Cooper is also currently an instructor for the National Center for Missing and Exploited Children ("NCMEC"), funded in part by Congress, where she testified that she teaches a forty-hour class on prostitution four to six times per year for the last ten years in which she trains investigators, prosecutors, judges and others on sexual exploitation through prostitution, including training related to pimp-prostitute relationship dynamics. Dr. Cooper testified that she has been involved with this organization for thirteen years and has worked with over two thousand law-enforcement agents, including under-cover officers, who work

specifically in the area of prostitution of women and children.  Dr. Cooper testified

that she regularly engages in case analyses and group discussions of various types

of prostitution cases with these law-enforcement agents in roundtables.   Further,

Dr. Cooper testified that she is a board member of NCMEC and a member of the

Law Enforcement Subcommittee which meets once a quarter to discuss new trends,

new laws, and new methods of investigating commercial sex exploitation.

       Dr. Cooper also testified that she serves as a consultant to the

NCMEC's "Innocence Lost Initiative," a federal agency run by the Federal Bureau

of Intelligence, which focuses on commercial sex trafficking.  In this capacity, Dr.

Cooper has worked with FBI agents and other intelligence-gathering professionals

since 2000 in order to educate herself on the subculture of pimping so that she can

better understand how pimps lure women and girls into prostitution and why

women and girls often feel unable to leave.  As part of NCMEC, Dr. Cooper

testified that she has interviewed and provided medical care to approximately thirty

to forty victims who prostituted for pimps.  Dr. Cooper testified that her role

involves her in active prostitution investigations and provides her interaction with

women recently removed from prostitution.  Additionally, in her role as a

consultant and physician, Dr. Cooper testified that she has treated and interviewed

many victims of sexual exploitation, including approximately twenty to twenty-five victims who prostituted for pimps.

Dr. Cooper testified that she has been qualified as an expert in court more than 300 times, qualified as an expert in federal courts fifteen to twenty times, and twice qualified in federal court as an expert regarding pimp-prostitute relationship dynamics.  See United States v. Davis, No. 3:07-CR-11 (D. Conn. 2008); see also United States v. Williams, no. 1:05-CR-443-3 (M.D. Pa. 2007).  As a consultant in United States v. Williams, a case involving 22 offenders and more than 100 victims, Dr. Cooper testified that she observed the testimony of a pimp cooperating with the prosecution as he detailed his pimping modus operandi.

In addition to presenting and advising, Dr. Cooper testified that she continues to receive ongoing training on the effect of addictive drugs and can testify to the dependency such drugs may foster in a prostitute for her pimp-supplier.   Dr. Cooper also testified to her training in diagnoses of Intimate Partner Violence Syndrome and how violence at the hands of an intimate partner can prevent the victim of such violence from seeking escape, which is one of the most important elements of prostitution.

Further, Dr. Cooper testified that she has studied documentary material with first-hand accounts of pimping including the film "Pimps Up, Hoes

Down," and she has reviewed extensive literature on sex trafficking.  Based on her qualifications, the Government argues that Dr. Cooper can offer expert opinion that reflects a significant exposure to pimps' perspectives.

The Defendant argues that Dr. Cooper "is essentially a victim's rights advocate who only has an antagonistic, one-sided perspective . . . ." (Mot. at 16.) Defendant's main argument regarding Dr. Cooper's qualification is that her experiences and training lack any direct experience with pimps, including interviews, field studies, or participation in any investigation of them or their organizations.  (Mot. at 8.)  Defendant also suggests that Dr. Cooper would be asked to opine on the behavior of pimps to "a reasonable degree of medical certainty[,]" and states that Dr. Cooper "should not be able to imbue her opinions about pimps and their behaviors with the authority and endorsement of the medical profession." (Id. at 9-10.)

Further, Defendant also contends that the first and third topics on which Dr. Cooper would testify constitute profiling testimony designed to indicate whether a person is a pimp or is involved in a sex trafficking organization.  (Id. at 9.)  However, Defendant compares such testimony to expert testimony in a complex drug trafficking case or an alien smuggling operation in which a law enforcement agent is allowed to testify as to "the general practices of criminals to

14

establish the defendants' modus operandi," and, more specifically, about how a particular type of criminal organization "typically operate[s]." (Id. (quoting Mejia-Luna, 562 F.3d at 1219).)  In doing so, Defendant acknowledges that "[t]he federal courts uniformly hold . . . that government agents or similar persons may testify as to general practices of criminals to establish the defendants modus operandi." See, e.g., Mejia-Luna, 562 F.3d at 1219 (citing United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984)).   In the instant case, however, Defendant argues that such testimony requires extensive personal and institutional experience investigating such organizations and investigating the types of people involved with them, of which Dr. Cooper allegedly has none.  (Mot. at 9.)

        The Court notes that the Government states that it will not seek any opinion testimony from Dr. Cooper on the specifics of this case.  (Opp'n at 9 n.2.) Instead, the Government intends to call Dr. Cooper for the purpose of providing background and context on what constitutes prostitution on behalf of a pimp because of force, fraud, and coercion.  (Id. at 1; see also Indictment, Counts 1-6, 9, 10.)  Defendant's characterization of Dr. Cooper as a victim's rights advocate who is "antagonistic, [and] one-sided" does not prevent Dr. Cooper's qualification as an expert.  To the extent that the Defendant believes Dr. Cooper holds bias regarding "pimping," such bias is a subject for cross-examination.  Likewise,

Dr. Cooper's lack of extensive particularized expertise with pimps as opposed to the women victimized by prostitution may go to the weight accorded to her testimony; however, it will not be used to preclude her admissibility as an expert. <u>See</u> <u>United States v. Garcia</u>, 7 F.3d 885, 890 (9th Cir. 1993) (citing <u>United States v. Little</u>, 753 F.2d 1420, 1445 (9th Cir. 1984)).  Additionally, Dr. Cooper's credentials show significant experience with prostitutes and government law enforcement agents through her own practice, consultations, and NCMEC.  Dr. Cooper's testimony shows that she has extensively studied pimps, interviewed approximately five pimps under the age of twenty-one, and interviewed fifty to sixty-five sex victims who gave accounts of their experiences with pimps, all of which has provided Dr. Cooper with extensive information regarding pimping operations.

Accordingly, the Court does not find any deficiency in Dr. Cooper's credentials that would warrant preclusion of her testimony.  <u>See</u> <u>United States v. Smith</u>, 520 F.3d 1097, 1105 (9th Cir. 2008) ("[A]n expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements.") (citation omitted).

B.      Reliability

        "As the Supreme Court emphasized in Kumho Tire Co., Ltd. v.

Carmichael, with respect to expert testimony 'the test of reliability is "flexible"

[and] the law grants a district court the same broad latitude when it decides how to

determine reliability as it enjoys in respect to its ultimate reliability

determination.'" United States v. Lopez-Martinez, 543 F.3d 509, 514 (9th Cir.

2008) (quoting Kumho Tire, 526 U.S. 137, 141-42 (1999)) (citation omitted)).

        Dr. Cooper testified that her methodologies in developing her

expertise are based on her own medical practice and personal interviews with

prostitution victims regarding their experiences with prostitution, including

substance abuse, intimate partner violence, and associated medical problems.  Dr.

Cooper also testified that she has based her research on clinical case analyses and

investigative intelligence from law enforcement professionals from the FBI and

law enforcement officers, which includes under-cover officers who investigate

prostitution.  Further, Dr. Cooper testified that she has also studied the work of

other researchers, including Dr. Richard Estes from the University of Pennsylvania

School of Social Work, who co-edited her two volume Child Sexual Exploitation

treatise.  The Government contends that through these methods, Dr. Cooper has

"gained a thorough understanding of the subculture of pimping, including the dynamics of the pimp-prostitute relationship."  (Opp'n at 13.)

In his Motion, Defendant argues that it is not entirely clear from the Government's materials what Dr. Cooper's methodology is actually based upon. (Mot. at 11.)  Defendant asserts that Dr. Cooper's credit as an author of a textbook on sexual exploitation of children is misleading because, based on previous testimony by Dr. Cooper, it appears that Dr. Cooper "was really the general editor of the textbook and did not herself author the sections of the book that discuss sex trafficking organizations and pimps."  (Id.)  Defendant also argues that some of Dr. Cooper's interviews with sex victims were by phone and that "her specific opinions about pimps and the methods they use to create and maintain sex trafficking organizations are derived not only from hearsay, but from second-degree or third-degree hearsay, at best."  (Id.)  Defendant further argues that Dr. Cooper does not use "some sort of accepted psychiatric or psychological test or methodology or, for that matter, even some sort of accepted law enforcement methodology to arrive at her profile of pimps and her general opinions about how they create and maintain a sex trafficking organization."  (Id.)

The Court finds that Defendant's objections are not supported by the record.  First, Dr. Cooper testified that in addition to being an author for many

other publications on the topic, she was lead editor of the child sexual exploitation

textbook at issue in which she selected the works submitted and participated in the

peer review process.  Dr. Cooper's role as lead editor of such a work is not

diminished by her lack of authorship of its text.  Second, it is not known to the

Court that there is any "sort of accepted psychiatric or psychological test or

methodology or . . . accepted law enforcement methodology" for determining a

profile of pimps, and Defendant has failed to produce any such evidence.  Also, as

Defendant acknowledges, an expert need not use a scientific or technical method to

establish the requisite degree of reliability that Rule 702 demands.  See, e.g.,

Lopez-Martinez, 543 F.3d at 515; Mejia-Luna, 562 F.3d at 1219.  Instead,

experience and training can provide a reliable basis for an expert's opinions.  Id.

As established above in Dr. Cooper's qualifications, Dr. Cooper's expertise as a

Developmental and Forensic Pediatrician serves to inform, but is not alone, the

basis for her expertise on the dynamics of the pimp-prostitute relationship.   In

addition to Dr. Cooper's research on pimps, which the Defendant deems "hearsay,"

Dr. Cooper has significant experience and training regarding pimps and their

behaviors that is based on reliable sources of information and personal experience

with sex victims and law enforcement personnel.

For all the reasons above, this Court finds Dr. Cooper's methodology reliable.  The crux of the Defendant's objections to Dr. Cooper's testimony rests not on her qualifications or the reliability of her methodology but rather on the validity and reliability of her conclusions regarding the modus operandi of pimps. However, it is not this Court's role to weigh Dr. Cooper's conclusions; rather, it is the Court's role to determine if her conclusions were arrived at by reliable methods.  As the Ninth Circuit has observed, "[w]hen credible, qualified experts disagree, a criminal defendant is entitled to have the jury, not the judge, decide whether the government has proved its case."  United States v. Sandoval-Mendoza, 472 F.3d 645, 654 (citing Dorn v. Burlington N. Santa Fe R.R. Co., 397 F.3d 1183, 1196 (9th Cir. 2005)).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert I, 509 U.S. at 596 (citation omitted).  Reliability is not determined based on the "correctness of the expert's conclusions but the soundness of his methodology." Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007) (quotation omitted).  Moreover, the Government has asserted that Dr. Cooper will not testify to her opinions on "pimping" in regards to Defendant.

The Court notes that while the relationship between prostitutes and pimps is not the subject of common knowledge, see United States v. Taylor, 239 F.3d 994, 998 (9th Cir. 2001) (citation omitted), no considerable debate exists within the literature as to the destructiveness or control aspects of a pimp-prostitute relationship.  See Note, Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution, 103 Yale L.J. 791, 793-96 (1993).  In light of the general acceptability of personal experience, training, interviews and research for becoming an expert in one's field, this Court finds that Dr. Cooper used generally reliable methodology.  See, e.g., Lopez-Martinez, 543 F.3d at 515 (citing Fed. R. Evid. 702); Mejia-Luna, 562 F.3d at 1219.

C.      Relevance

Finally, this Court must undertake the second step in the Daubert inquiry and assess whether the expert testimony relates to an issue in this case.  See Daubert I, 509 U.S. at 591 (analyzing Rule 702's requirement that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue . . . .").  Under Rule 401, evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.

The Court notes that at the <u>Daubert</u> hearing, Defendant acknowledged that relevance is not contested.

In <u>United States v. Taylor</u>, the Ninth Circuit upheld the admission of expert testimony on "the relationship between prostitutes and pimps" as relevant in a sex trafficking case in order to explain why a prostitute may not have testified truthfully in previous proceedings about her relationship with her pimp.  <u>See</u> <u>Taylor</u>, 239 F.3d at 998.   The Ninth Circuit stated that "[b]y and large, the relationship between prostitutes and pimps is not the subject of common knowledge."  <u>Id.</u> (citing Note, <u>Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution</u>, 103 Yale L.J. 791, 793-96 (1993); Ann M. Coughlin, <u>Of White Slaves and Domestic Hostages</u>, 1 Buff. Crim. L. Rev. 108, 120-21, 124-25 (1997) (discussing the general confusion over why a prostitute does not leave an abusive relationship with a pimp").  The <u>Taylor</u> court explained that: "[a] trier of fact who is in the dark about that relationship may be unprepared to assess the veracity of an alleged pimp, prostitute, or other witness testifying about prostitution."  <u>Taylor</u>, 239 F.3d at 998; <u>see</u> <u>also</u> <u>United States v. Anderson</u>, 851 F.2d 384, 392-93 (D.C. Cir. 1988) (affirming the relevance of expert testimony on common modus operandi of pimps and on the nature of the relationship between pimps and prostitutes in a sex trafficking case).

In <u>Anderson</u>, the United States' expert witness, Dr. Lois Lee, testified regarding how pimps recruit vulnerable young women and "described the prostitute-pimp relationship as a love-hate relationship, and noted that prostitutes are often so financially and psychologically dependent on their pimps that they are unable to leave even when they are beaten." <u>See</u> <u>Anderson</u>, 851 F.2d at 392. The D.C. Circuit upheld the relevance of Dr. Lee's testimony because the subject matter of the testimony might have "shed light on critical issues in the case" such as whether United States' witnesses had traveled with the defendant "independently, or as part of a pimp-prostitute relationship." <u>Id.</u> The court also stated that such testimony "could have helped the jury to determine the credibility of the government's prostitute-witnesses, which counsel for appellant had sought to undermine on cross-examination . . . by intimating that they would not have remained with Anderson if he had mistreated them as they claimed." <u>Id.</u> at 393. The court observed that "[l]eft unrebutted, such cross-examination could have led the jury to speculate that the mistreatment alleged by the government's witnesses did not actually occur; that the young women had traveled with [defendant] quite voluntarily; and that they had not engaged in prostitution at his direction." <u>Id.</u>

In addition to <u>Taylor</u>, the Ninth Circuit has affirmed the admission of expert testimony concerning defendants' modus operandi in other types of criminal

operations.  See United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) ("We

have consistently held that government agents or similar persons may testify as to

the general practices of criminals to establish the defendants' modus operandi.");

Mejia-Luna, 562 F.3d at 1219; see also United States v. Romero, 189 F.3d 576,

584-87 (7th Cir. 1999) (affirming admission of expert testimony as to

characteristics and methods of child molesters).  Such testimony "helps the jury to

understand complex criminal activities, and alerts it to the possibility that

combinations of seemingly innocuous events may indicate criminal behavior."

United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

Defendant acknowledges that the Ninth Circuit has held that expert

opinion evidence "on the relationship between prostitutes and their pimps" is

relevant in "a criminal trial of an alleged pimp."  (Mot. at 12 (citing Taylor, 239

F.3d at 997–998).)  However, Defendant argues that portions of Dr. Cooper's

testimony may be not relevant even after Taylor.  (Id.)  Defendant uses as an

example "testimony about extreme levels of violence that occurred in other cases

or about the deleterious effects of prostitution rings on society in general would not

tend to make any facts of consequence in this matter more or less probable."  (Id.)

In the instant case, the Government intends to call prostitutes as

witnesses thereby requiring the jury to assess the credibility of such prostitutes and

providing a specific need for the jury to understand pimp-prostitute relationship dynamics.  Dr. Cooper testified that she intends to present to the jury information regarding frequently observed norms in the pimping and prostitution subculture including circumstances that make sex victims susceptible to prostitution, the reasons why a sex victim would stay with a pimp even when beaten, or the reasons why such victims would minimize the culpability of those for whom they worked.

Dr. Cooper's testimony is also pertinent to jurors' determination of the credibility of the prostitutes sought to be presented by the Government. Without such testimony, jurors might presume that the victims did not want to escape from Defendant's alleged operation because they failed to run away on the occasions when they were beyond his physical grasp.   Dr. Cooper testified that previously-identified victims of sex trafficking report that they did not take advantage of seemingly available opportunities to escape for a myriad of reasons. The Court finds that Dr. Cooper's testimony could aid the jury in understanding how these women could be the victims of fraud, force or coercion rather than simply willing participants with free will to exit their situation.

However, testimony regarding the effects of prostitution rings on society at large or discussions regarding extreme levels of violence used by pimps against prostitutes that is not limited to that necessary to show how pimps use

25

fraud, force or coercion over their victims is not relevant and is hereby excluded.

Such testimony does not go to any issue in the case, and therefore, will not assist

the jury to understand or determine a fact in issue.

      In conclusion, this Court finds that Dr. Cooper's testimony is

sufficiently reliable and relevant to deny the Defendant's motion to exclude under

Rule 702.  Her medical practice and training combined with her study with law

enforcement agents of the subculture of pimping and prostitution and her personal

interviews of prostitution victims qualify her as an expert in pimp-prostitute

relationship dynamics and provide an adequate data base upon which to formulate

reliable opinions.  Dr. Cooper's testimony is sufficiently tied to the issues

necessary for determination, and the Court believes her testimony would assist the

trier of fact.  Further, Dr. Cooper's testimony will be subject to the relevancy

limitations as outlined above.

II.    <u>Prejudice Under Rule 403 and the Fifth and Sixth Amendments to the
United States Constitution</u>

      The Court notes, that analysis regarding the possible prejudicial effect

of expert testimony is part of the "fit" test of <u>Daubert</u>.  <u>Daubert II</u>, 43 F.3d at 1321

n.17.  However, given the nature of the accused offense, the Court will analyze

whether the probative value of Dr. Cooper's testimony is outweighed by the danger

of unfair prejudice separately below.  Defendant argues that even if admissible

under Rules 702 and 402, Dr. Cooper's testimony should be ruled inadmissible under Rule 403.  (Mot. at 13.)  Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The probative value of Dr. Cooper's testimony is substantial. Her testimony bears directly on an element of eight of the thirteen counts in the Indictment.  However, there is often an inherent danger with expert testimony unduly biasing the jury "[b]ecause of its aura of special reliability and trust," United States v. Amaral, 488 F.2d 1148 (9th Cir. 1973).   Defendant alleges that Dr. Cooper's testimony will "inflame the jury's passions," and will "distract, confuse, and mislead the jury, focusing them on matters that have little if anything to do with whether Mr. King committed the elements of the charged offenses." (Mot. at 15.)  In support, Defendant additionally argues that Dr. Cooper's testimony constitutes "profiling" that pimps and prostitutes behave as she would describe and does not, without something more, "make it more or less probable that Defendant (and the purported victims in this matter) behaved in such a fashion."

The Court again notes that the Government has stated that Dr. Cooper will not offer opinion testimony about the Defendant's acts or about any of the particular facts in this case.  Further, as to Defendant's fear that Dr. Cooper's testimony would "inflame the jury's passions," the Court has limited the subject matter to which Dr. Cooper may testify to that relevant in the instant case, which involves the subject matter already contained in the Indictment regarding Defendant's alleged prostitution of minors.  See Fed. R. Evid. 702 & advisory committee notes, (permitting expert testimony in the form of an opinion "or otherwise" consistent with the "venerable practice of using expert testimony to educate the factfinder on general principles").   The Ninth Circuit case law is clear that in certain circumstances present here, such as elements of force, fraud, or coercion, such testimony useful to the trier of fact.  See Taylor, 239 F.3d at 998.

Moreover, as to Defendant's claims that Dr. Cooper's testimony will confuse the jurors or that her testimony is little more than "profiling" without "something more" offered, the "something more" in this case will be the evidence offered by the Government at trial, including Defendant's own admission that he "dabbled" as a pimp.  If such evidence is insufficient to establish all of the elements of the Indictment, general testimony by Dr. Cooper regarding the

behavior of pimps and prostitutes will not support a verdict by the jury.[2]

Additionally, as above, the Court notes that Defendant's a characterization of Dr.

Cooper as "biased" does not necessarily cause her testimony to be prejudicial.  To

the extent that the Defendant believes Dr. Cooper has bias regarding "pimping,"

such bias is a subject for cross-examination.  This Court has already qualified Dr.

Cooper and found her methodology reliable and her testimony relevant.  An

argument that Dr. Cooper is antagonistic towards pimps does not outweigh the

probative value of her testimony.

   While the Court is aware of and appreciates the concerns expressed by

Defendant, a court must assess the relative probative value with the potential for

confusion or misleading and make a decision based on the specific facts and

circumstances presented.  In the instant case, any alleged risks of unfair prejudice

---

[2] Defendant asserts that "the only purpose of [Dr. Cooper's] testimony is to prejudice the jury against Mr. King simply on the basis of the allegation that he is a pimp. (Mot. at 15 (citing cf. Meeks v. Moore, 216 F.3d 951, 967 (11th Cir. 2000) ("even if Meeks established that racism existed in Perry, Florida at the time he was convicted, his claim of prejudice must still fail because he has entirely neglected to show that racial basis play any part in his convictions" (citing McClesky v. Kemp, 481 U.S. 279, 292–293 (1987))).  Such an argument is not pertinent here where the Government intends to produce evidence of Defendant's role as a pimp and, indeed, the Government intends to introduce evidence that Defendant admitted to agents that he "dabbled" in pimping and that Defendant has two prior convictions for promoting the prostitution of minors.

raised by the Defendant cannot outweigh the probative value of Dr. Cooper's testimony to the jury, let alone "substantially" outweigh it.

Defendant also argues that Dr. Cooper's testimony is inadmissible under the Fifth and Sixth Amendments to the United States Constitution for reasons identical to such testimony's alleged inadmissability under Rule 403.  The Court rejects Defendant's arguments for the same reasons that it finds that the probative value of Dr. Cooper's testimony is not substantially outweighed by the danger of unfair prejudice under Rule 403.

As such, this Court finds that Dr. Cooper's testimony is admissible under Rule 403 because it may be significantly probative on the issue of whether Defendant exercised force, fraud or coercion in committing the offenses alleged in the indictment.  Moreover, the potential for jury confusion does not substantially outweigh the possible probative value as the Government will not introduce Dr. Cooper's opinion testimony and the Government will introduce independent evidence of Defendant's role as a pimp as alleged in the Indictment.

III.    <u>Failure to Submit Material Under Federal Rule of Criminal Procedure 16</u>

Defendant has also moved to preclude the testimony of Dr. Cooper

because the Government allegedly failed to provide interview reports in violation

of Fed. R. Crim. P. 16(b)(1)(B).  (<u>See</u> Mot. at 16-17.)

Rule 16 requires the government to provide the defense with "a

written summary" of the testimony it expects to adduce from an expert witness and

that summary must "describe [her] opinions, the bases and reasons for those

opinions, and [her] qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  Rule 16(d)(2)

provides that if a party fails to comply with Rule 16, this Court may "prohibit that

party from introducing the undisclosed evidence" and may "enter any other order

that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C) and (D).

To date, the Government has provided Defendant with a notice letter

regarding its intent to call Dr. Cooper as an expert witness, (<u>see</u> Mot., Ex. A), a

copy of Dr. Cooper's curriculum vitae, (<u>see</u> <u>id.</u>, Ex. B), and a copy of her

testimony at a pretrial hearing in an unrelated case.  (<u>See</u> <u>id.</u> at 4.)  Defendant

contends that these materials do not satisfy Rule 16(a)(1)(G) because the notice

letter does not describe Dr. Cooper's opinions, but instead "merely describes the

areas in which the government expects to qualify Dr. Cooper as an expert."  (<u>See</u>

31

id., Ex. A.)  Defendant alleges that the materials also fail to inform Defendant of the bases and reasons for Dr. Cooper's opinions.  (Id. at 17.)  The Government argues that its notice comported with the requirements of Rule 16(a)(1)(G), and any deficiency will be cured by the instant litigation concerning Dr. Cooper's qualifications that is almost three months before trial.

This Court finds that the materials submitted by the Government, and supplemented by the instant motion and the testimony of Dr. Cooper at the Daubert hearing, are sufficient to fulfill the Government's Rule 16 obligations.  Any delay in obtaining such material will not prejudice Defendant as trial is not scheduled until June 2, 2010.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion and will allow Dr. Cooper to testify at Defendant's trial, subject to the limitations discussed above.  As indicated, the Court limits Dr. Cooper's testimony so that she is hereby prohibited from testifying regarding effects of prostitution rings on society at large or discussions regarding extreme levels of violence used by pimps

against prostitutes that is not limited to that necessary to show how pimps use

fraud, force or coercion over their victims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 17, 2010.



_____
David Alan Ezra
United States District Judge

United States v. King, CR. NO. 09-00207 DAE; ORDER DENYING
DEFENDANT'S MOTION IN LIMINE TO PRECLUDE TESTIMONY OF A
GOVERNMENT EXPERT AT TRIAL