IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‛I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 09-00207  DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RODNEY D. KING, and        [01] | ) | |
| SHARON-MAE NISHIMURA [02] | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS
COUNTS OF THE SECOND SUPERSEDING INDICTMENT

On May 3, 2010, Defendant Rodney King's motions to dismiss

multiple counts of the indictment (Docs. ## 139, 140, 141) came before the Court

for hearing.   Edward G. Caspar, Trial Attorney, U.S. Department of Justice, and

Darren W. K. Ching, Assistant U.S. Attorney, appeared at the hearing on behalf of

the Government; Matthew C. Winter and Salina Althof, Assistant Federal

Defenders, appeared at the hearing on behalf of Defendant King ("Defendant").

After reviewing the motions and the supporting and opposing memoranda, the

Court DENIES Defendant's motions.

## BACKGROUND

Many of the facts of this case have been described in a previous order by this Court. (See Doc. # 114.) Accordingly, only facts relevant to the assessment of the instant motions are recounted.

On May 20, 2009, a federal grand jury returned a six-count indictment against Defendant and co-defendant Sharon-Mae Nishimura ("Nishimura"). (Doc. # 1.) On September 23, 2009, the Government filed a superseding indictment charging Defendant with 13 counts. (Doc. # 35.) On September 30, 2009, Defendant entered a plea of not guilty. (Doc. # 44.)

On January 14, 2010, the Government filed a second superseding indictment ("Indictment") charging Defendant with Counts 1-4 and 7-12, in violation of 18 U.S.C. § 1591, Counts 5-6, in violation of 18 U.S.C. §§ 1594, 1591; and Count 13, in violation of 18 U.S.C. § 371. (Doc. # 64.) On January 15, 2010, Defendant entered a plea of not guilty. (Doc. # 70.)

On April 5, 2010, Defendant filed the instant motions to dismiss multiple counts against him from the Indictment. (Docs. ## 139-141.) Defendant's first motion ("First Motion") moves to dismiss Counts 7, 8, 11, and 12 for failure to state offenses. ("First Mot.," Doc. # 139.) Defendant's second motion ("Second Motion") moves to dismiss Counts 1, 3, 5, 7, 9, and 11 or counts

2

2, 4, 6, 8, and 12, or otherwise redress the multiplicity of these counts.  ("Second

Mot.," Doc. # 140.)   Defendant's third motion ("Third Motion") moves to dismiss

Counts 9 and 10 or counts 11 and 12, or otherwise redress the multiplicity of these

counts.  ("Third Mot.," Doc. # 141.)  On April 19, 2010, the Government filed its

response in opposition to Defendant's motions.  ("Opp'n to ____ Mot.," Docs

## 155-157.)  On April 20, 2010, Defendant filed his replies.  ("Reply to ___

Mot.," Docs. ## 160-161.)


## DISCUSSION

I.    Underline Text: First Motion: Motion to Dismiss Counts 7, 8, 11, and 12 for
      Failure to State Offenses

              Defendant moves to dismiss Counts 7, 8, 11, and 12 of the

Indictment because, allegedly, each count fails to allege an element that is

necessary to impose the punishment set forth in 18 U.S.C. § 1591(b)(2).  (First

Mot. at 3-8.)  Specifically, Defendant argues that section 1591 requires as an

element that the victims had in fact attained the age of 14 but had not yet attained

the age of 18 instead of the Indictment's charge that Defendant acted knowing that

his victims had attained the age of 14 but had not yet attained the age of 18.  (Id.)

Defendant alleges that the grand jury, therefore, failed to find all of the elements

necessary to sufficiently allege an offense against the United States as to each of

these counts, and accordingly, the counts must be dismissed because each fails to state an offense.  (Id.)  The Government argues that Defendant makes the implausible claim that the charges that he acted "knowing that" his victims had attained the age of 14 but had not yet attained the age of 18 do not suffice to allege that his victims had in fact attained the age of 14 but had not yet attained the age of 18.  (Opp'n to First Mot. at 3.)

Counts 7, 8, 11, and 12 charge Defendant with the sex trafficking of two girls under the age of 18.  (See Indictment.)  Title 18, section 1591 prohibits sex trafficking of minors and of adults if the trafficking is effected by force, fraud, or coercion.  See 18 U.S.C. § 1591.  Counts 7, 8, 11, and 12 of the Indictment each allege a violation of subsections 1591(a) and 1591(b)(2).[1]  (Indictment at 7, 8, 11, & 12.)  Subsections 1591(a) and 1591(b) provide as follows:

(a)    Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

---

[1] All citations to section 1591 are to the version of section 1591 in effect from July 27, 2006 to December 22, 2008—the time frame in which the crimes against Defendant are alleged to have occurred.  Section 1591 was amended on December 23, 2008, after the time frames alleged in the indictment.  For clarity, the Court speaks of the prior version of the statute in the present tense.

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing that force, fraud or coercion described in subsection (c)(2)[²] will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

(b)     The punishment for an offense under subsection (a) is—

(1)     if the offense was effected by force, fraud, or coercion or if the person recruited, enticed, harbored, transported, provided, or obtained had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

(2)     if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, or obtained had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

18 U.S.C. § 1591.

---

[²] Subsection 1591(c)(2) defines the term "coercion" as:

(A)     threats of serious harm to or physical restraint against any person;

(B)     any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person;

(C)     or the abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1591(c)(2).

Counts 7 and 11 allege violations of subsections 1591(a)(1) and (b)(2).  Counts 8 and 12 allege violations of subsections 1591(a)(2) and (b)(2).  All of these Counts charge that Defendant acted "knowing that [each victim] had attained the age of fourteen (14) but had not yet attained eighteen (18) years of age." (Indictment at 6, 7, 9.)  The charges do not state additionally that each victim had in fact attained the age of 14 but had not yet attained the age of 18.

Preliminarily, the Government argues that it need not have alleged any of the factors in subsection 1591(b) because such factors operate solely to limit the court's discretion in sentencing by increasing the mandatory minimum sentence. (Opp'n to First Mot. at 10.)  In support, the Government states that the penalty provision set out in subsection 1591(b) does not alter the maximum penalty for the sex trafficking crimes it prohibits in subsection 1591(a), nor does it create a separate offense.  Rather, the Government argues, the provision operates solely to limit the court's discretion in sentencing by increasing the mandatory minimum sentence.  See 18 U.S.C. § 1591(b).  As such, the Government states that the factors identified in section 1591(b)—whether a defendant's victims had attained the age of 14 but had not yet attained the age of 18—would not need be alleged in the indictment or proved to a jury.  (See id. (citing Harris v. United States, 536 U.S. 545, 568 (2002); see also McMillan v. Pennsylvania, 477 U.S. 79 (1986).)

6

The Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Jones v. United States, 526 U.S. 227 (1999) held that "'any fact (other than prior conviction]) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" Apprendi, 530 U.S. at 476 (quoting Jones, 526 U.S. at 243 n. 6) (emphasis added). Defendant argues that the subsection 1591(b) elements must be found by both the grand and petite juries because such elements provide the only authority for punishment in the statute. (See First Mot. at 3-4; Reply to First Mot. at 2-5.)

In support, Defendant asserts that in United States v. Todd, 584 F.3d 788, 793–794 (9th Cir. 2009) the Ninth Circuit recognized that there is a hole in section 1591 when the victims are over 18 and the offense was not effected by force, fraud, or coercion. Todd, 584 F.3d at 793. The Todd court found that in such a circumstance, no punishment could be imposed upon a defendant because the jury failed to find the facts set forth in subsection 1591(b) on which imprisonment is justified. Id. at 793–794. Therefore, Defendant argues that because the facts set forth in subsection 1591(b) are necessary in order to authorize the maximum punishment to which a defendant is exposed, those facts are elements, not sentencing factors, and they must therefore be alleged in the

indictment and proven to a jury beyond a reasonable doubt.  (Reply to First Mot. at 4-5.)

This Court agrees with Defendant that as per <u>Todd</u>, the facts set forth in subsection 1591(b) are offense elements necessary to justify the maximum sentence, or any sentence, imposed by the statute.  Section 1591 provides for the imposition of a sentence in three circumstances: (1) if the violation of subsection 1591(a) is effected by force, fraud, or coercion, then the defendant may be sentenced to a term of imprisonment between 15 years to life, 18 U.S.C. § 1591(b)(1); (2) if the violation of subsection 1591(a) is against a victim who is younger than 14 years of age at the time of the offense, then the defendant may be sentenced to a term of imprisonment between 15 years to life, 18 U.S.C. § 1591(b)(1); or (3) if the violation of subsection 1591(a) is against a victim who is older than 14 but younger than 18 years of age at the time of the offense, then the defendant may be sentenced to a term of imprisonment between 10 years to life, 18 U.S.C. § 1591(b)(2).  Therefore, this Court addresses Defendant's Motion as one asserting a lack of elements necessary for the imposition of a sentence for the Indictment's section 1591 charges.

The Fifth Amendment requires that a defendant be convicted only on charges considered and found by a grand jury.  <u>U.S. v. Du Bo</u>, 186 F.3d 1177,

1179 (9th Cir. 1999) (citation omitted).  An indictment lacking an essential element does not properly allege an offense against the United States and generally constitutes a fatal defect that can not be cured through jury instructions because a such a missing essential element leaves nothing for a petit jury to ratify.  See id. at 1180 (citations and quotations omitted).

Federal Criminal Rule 7 governs the nature and contents of indictments.  See Fed. R. Crim. P. 7(c).  Rule 7 requires "a plain, concise, and definite written statement of the essential facts constituting the offense . . . ."  Fed. R. Crim. P.  7(c)(1); United States v. Awad, 551 F.3d 930, 935 (9th Cir. 2009). An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy.  Awad, 551 F.3d at 935; see Hamling v. United States, 418 U.S. 87, 117 (1974).  "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'"  Awad, 551 F.3d at 935 (quoting United States v. Hinton, 222 F.3d 664, 672 (9th Cir. 2000)).  As the Ninth Circuit has held, "[a]n indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied."  United States v. Lazarenko, 564 F.3d 1026, 1033 (9th Cir. 2009).

Defendant asserts that the way that section 1591 is drafted demonstrates that Congress recognized that a victim's actual age is not subsumed by what the defendant thinks he knows about the victim's age.  (Reply to First Mot. at 9.)   Defendant again relies on <u>Todd</u>, to argue that "knowing" the facts in the statute's penalty provision, subsection 1591(b), is not consubstantial with those facts actually being true.  (<u>Id.</u>)  <u>Todd</u> considered whether charges in an indictment that the defendant had acted "knowing that force, fraud, or coercion would be used," satisfied the required elements of subsection 1591(b)(1) that force, fraud, or coercion was actually used.  The <u>Todd</u> court held that because the statute's penalty provision—subsection 1591(b)—set penalties based on whether the offense "was effected by" force, fraud, or coercion for adult victims, and because the jury had found only that the defendant had acted "knowing that force, fraud, or coercion would be used," the defendant could not be sentenced.  <u>Todd</u>, 584 F.3d at 792-94. The <u>Todd</u> court explained that the language "would be" created room for a possibility that force, fraud, or coercion were never actually used against the victim.  <u>Id.</u>

<u>Todd</u> is inapposite to the deficiency in the Indictment alleged by Defendant.  The Ninth Circuit in <u>Todd</u>, in the context of subsection 1591(a)'s requirement that a defendant know that force, fraud, or coercion "<u>will be used</u>" to

cause a victim to engage in a commercial sex act, discussed how it was possible for someone to "'know' the future." Todd, 584 F.3d at 792.  The court stated that with respect to force, fraud, or coercion, it meant that the knower was "familiar with a pattern of conduct."  Id.

Here, the Indictment does not employ equivocal language like that at issue in Todd, such as a charge that Defendant knew his victims "would have" attained the age of 14 but "would not yet have" attained the age of 18.  Further, looking at the language in 18 U.S.C. § 1591, subsection 1591(a) requires Defendant's knowledge that a victim had not attained the age of 18 years if punishment is to be imposed as per subsection 1591(b) based upon the victim's age.  See 18 U.S.C. § 1591(a), (b).  In contrast with the issue in Todd, knowledge of that a victim "has not attained the age of 18 years" does not require such speculation into the future; instead the statute clearly describes such knowledge as knowledge of the present "that the person has not attained the age of 18 years[.]" In the instant case, the relevant language in the Indictment when compared with the statute does not create a possibility that the alleged victims were not within the age range "known" by Defendant.  The language in the Indictment that Defendant acted "knowing that" his alleged victims had attained the age of 14 but had not yet

attained the age of 18 clearly establishes that Defendant had knowledge of the alleged victims' actual ages.

Defendant additionally argues that his knowledge of a fact is not consubstantial with truth of the fact because purportedly "knowing" a fact does not make that fact actually true.  (First Mot. at 7.)  Specifically, Defendant asserts that the charge that Defendant violated subsections 1591(a)(1) or (a)(2) while subjectively "knowing" that the alleged victims were a certain age does not allege the objective fact that the alleged victims actually were that age because many things thought to be known "often do not turn out to be true, e.g., the Earth is not flat, and the Sun does not orbit the Earth."  (Reply to First Mot. at 7.)  The Court disagrees.

The counts sufficiently imply that the victims in fact had attained the age of 14 but had not yet attained the age of 18 by charging that Defendant acted "knowing" that the alleged victims had attained the age of 14 but had not yet attained the age of 18.  Knowledge is defined as "[a]n awareness or understanding of a fact or circumstance." Black's Law Dictionary 876 (7th ed. 1999); <u>see</u> <u>also</u> Robin Charlow, <u>Wilful Ignorance and Criminal Culpability</u>, 70 Tex. L. Rev. 1351, 1374-75 (1992) ("[W]e do not normally impose criminal liability when the applicable mens rea is knowledge unless the thing that must be known actually is

true or exists . . . . Hence,  . . . knowledge requires both belief, or subjective

certainty, and the actual truth or existence of the thing known.  In short, criminal

knowledge is correct belief.") (citations omitted).

The Ninth Circuit in United States v. Awad, 551 F.3d 930 (9th Cir.

2009) considered the sufficiency of an indictment that failed to allege that the

defendant acted with a mens rea of willfulness that was required for the charged

offense.  See Id. at 935-36.  The Awad court sustained the sufficiency of the

indictment because the defendant's willfulness, or in definition "bad purpose,"

could be inferred from the totality of facts alleged in the indictment.  See id. at

936-37.

Similarly, in United States v. Alber, 56 F.3d 1106 (9th Cir. 1995), the

Ninth Circuit considered the sufficiency of an indictment that failed to allege that

the defendant acted with the intent to extort in an action for mailing a threatening

letter with intent to extort.  See id. at 1111-12.  The Alber court held that the

indictment sufficiently implied the required intent when the indictment included

evidence of a threatening letter from the defendant stating: "If Marc Kaplan does

not pay $250,000 in cash in one week, his son's arm or leg will be amputated."  Id.

at 1112.  As the Ninth Circuit explained, "[c]ommon sense would tell any reader

that the letter was sent with the intent to extort."  Id.  Therefore, the court held that

13

the indictment sufficiently set forth the essential facts necessary to allege the

element of intent.  Id.

When the challenged counts are "construed according to common

sense, and interpreted to include facts which are necessarily implied," Lazarenko,

564 F.3d at 1033, they must be read to allege that the victims had in fact attained

the age of 14 but had not yet attained the age of 18 and, therefore, the charges did

not fail to recite an essential element of the charge.  In the context of the

Indictment, Defendant could not "know" that the victim had attained the age of 14

but had not yet attained the age of 18 unless each victim actually had attained the

age of 14 but had not yet attained the age of 18.  Like in Awad and Alber, from the

Indictment's charges that Defendant "knew" that his victims had attained the age

of 14 but had not yet attained the age of 18, "[c]ommon sense would tell any reader

that" the victims had in fact attained the age of 14 but had not yet attained the age

of 18.  The Court additionally notes that while not sufficient in and of itself to

allege that the victims had attained the age of 14 but had not yet attained the age of

18, the instant Indictment continuously uses the word "minor" in relation to the

victims that had attained the age of 14 but had not yet attained the age of 18 (see

Indictment at 6, 7, 8, 9, 11) and even alleges with respect to the conspiracy count

that Defendant provided A.N.H. with false identification that falsely purported that

14

A.N.H. was over the age of 18.  (See id. at 14.)   Therefore, the challenged counts

sufficiently allege that each of the victims "had attained the age of 14 years but had

not attained the age of 18 years" as required by 18 U.S.C. § 1591(b)(2).[3]

The Ninth Circuit directed in Hinton that the question is not whether

the indictment could have been framed in a more satisfactory manner, but whether

it meets minimum constitutional standards.  Hinton, 222 F.3d at 672.  Here, the

addition of the word "knowing" is not fatal, as the facts presented to the Grand

Jury as per the Indictment sufficiently informed Grand Jury of the charges against

Defendant, and the Indictment provided Defendant with full knowledge of the

charges against him, enabled him to plead double jeopardy, and enabled him to

prepare his defense.  See Awad, 551 F.3d at 937; United States v. Rosi, 27 F.3d

409, 414 (9th Cir. 1994) (citation omitted).  Moreover, the Court is well able to

determine the sufficiency of the charge.  See id. (citation omitted).

Accordingly, the Court DENIES Defendant's Motion to Dismiss

Counts 7, 8, 11, and 12 for Failure to State Offenses.

---

[3] For the same reasons, Defendant's argument that a conviction would
impermissibly amend the indictment fails.  The Government's presentation of
evidence that Defendant's alleged victims had in fact attained the age of 14 but had
not yet attained the age of 18 would not constitute "facts distinctly different from
those set forth in the charging instrument."  United States v. Von Stoll, 726 F.2d
584, 586 (9th Cir. 1984).

II.     Second Motion: Motion to Dismiss Counts 1, 3, 5, 7, 9, and 11 or Counts 2,
        4, 6, 8, and 12, or Otherwise Redress the Multiplicity of these Counts

The Indictment charges Defendant with sex trafficking crimes

involving five victims.  (See Indictment.)  The Indictment charges for each alleged

victim individually that Defendant violated subsection 1591(a)(1) by "recruit[ing],

entic[ing], harbor[ing], transport[ing], provid[ing], or obtain[ing] the victim" for

commercial sex.  (Id. at 1, 3, 5, 7, 9, 11.)  Likewise, the Indictment also charges for

each alleged victim that Defendant violated subsection 1591(a)(2) on the same

dates by "benefit[ing] financially . . . from participation in a venture" that itself

recruited, enticed, harbored, etc., the victims for commercial sex.  (Id. at 2, 4, 6, 8,

10, 12.)  Therefore, Counts 1, 3, 5, and 9 allege violations of subsections

1591(a)(1) and (b)(1), whereas Counts 2, 4, 6, and 10 each allege violations of

subsections 1591(a)(2) and (b)(1).  Moreover, Counts 7 and 11 allege violations of

subsections 1591(a)(1) and (b)(2), whereas Counts 8 and 12 allege violations of

subsections 1591(a)(2) and (b)(2).

Defendant argues that these counts are multiplicitous because the

offense set forth in section 1591(a)(1), which is alleged in the odd numbered

Counts, is an included offense of the offense defined in section 1591(a)(2), which

is alleged in the even numbered Counts.  (Second Mot. at 2-9.)  Although the

Government disagrees that subsection 1591(a)(1) defines an included offense of

16

the offense defined in subsection 1591(a)(2), it nonetheless agrees that the Counts are multiplicitous because subsections 1591(a)(1) and (a)(2) set forth alternative means of committing a single offense, rather than—as Defendant maintains—elements of two separate offenses.  (See id.; Opp'n to Second Mot. at 2.)

When one offense is a lesser included offense of the other, or two different criminal statutory provisions punish the same offense, the Fifth Amendment's Double Jeopardy Clause prohibits imposing punishment on a defendant for both offenses.  United States v. Overton, 573 F.3d 679, 690 (9th Cir. 2009).  The Ninth Circuit employs the test from Blockburger v. United States, 284 U.S. 299 (1932), to determine whether one offense is a lesser included offense of another.  United States v. Davenport, 519 F.3d 940, 943 (9th Cir. 2008) (citation omitted).  The Blockburger test is also used to determine whether two separate statutory provisions prohibit the same offense and should be properly regarded as one offense.  See Blockburger, 284 U.S. at 304; Overton, 573 F.3d at 691. However, ultimately, the Blockburger test is simply a tool to apply if a court cannot discern Congressional intent: courts "look to congressional intent; did Congress intend to punish two separate evils, or merely one?"  United States v. Hairston, 64 F.3d 491, 495 (9th Cir. 1995); see also Albernaz v. United States, 450

17

U.S. 338 (1981); United States v. Sanchez-Vargas, 878 F.2d 1163, 1171 n. 8 (9th Cir. 1989) ("Given this indication of congressional intent with respect to multiple punishments under § 1324(a)(1), we need not address the principles of statutory construction established in Blockburger . . . .").

Defendant asserts that the Blockburger test applies to section 1591 to determine whether subsection 1591(a)(1) is a lesser included offense of subsection 1591(a)(2).  (Second Mot. at 6.)  The Government also applies the test, although it notes that the test may not appropriately apply here because section 1591 involves only one statutory provision.[4]  (Opp'n to Second Mot. at 3 & n.1-2.)  The Blockburger test has not been applied to determine whether one offense is a lesser included offense of another, or to determine whether or not Congress meant for it to establish more than one offense, when only a single statutory provision is involved.  See Overton, 573 F.3d at 692-93; Davenport, 519 F.3d at 943; United States v. Keen, 104 F.3d 1111, 1118 n.12 (9th Cir. 1996).  Courts generally utilize the Blockburger test to determine whether two separate statutory provisions

---

[4] The Government focuses its analysis on whether section 1591(a) establishes one offense or two separate offenses, not on whether a subsection 1591(a)(1) is a lesser included offense of subsection 1591(a)(2).  (Opp'n to Second Mot. at 3 & n.1-2.)

prohibit the same offense or one is a lesser included offense of the other.  <u>See</u>

<u>Overton</u>, 573 F.3d at 691; <u>Davenport</u>, 519 F.3d at 943.

        Here, there is only one statutory provision—section 1591.

Subsections 1591(a)(1) and (a)(2) are not self contained as in <u>Overton</u>, but instead

both subsections are within the overall statutory provision of 1591(a) and should

be properly regarded as parts of a single statutory provision.  <u>See</u> 18 U.S.C.

§ 2251(a), (b).  Subsections 1591(a)(1) and (a)(2) each share an opening

element—"whoever knowingly"—and a closing clause with both another

element—knowledge of force, fraud, or coercion or a victim's under-age

status—and a provision of punishment as provided by subsection 1591(b).  <u>See</u> 18

U.S.C. § 1591(a).  Further, subsection 1591(a)(2) relies upon the element defined

in subsection 1591(a)(1).  <u>See</u> 18 U.S.C. 1591(a)(2)("benefits, financially or by

receiving anything of value, from participation in a venture which has engaged in

an act described in violation of paragraph (1)[]").

        Despite the existence of one statutory provision, the Court finds that

analyzing Congressional intent would produce the same result as analysis under the

<u>Blockburger</u> test.  Accordingly, below, the Court analyzes whether subsection

1591(a)(1) is a lesser included offense of subsection 1591(a)(2) under the

Blockburger test and separately analyzes Congressional intent to determine

whether section 1591(a) establishes one offense or two separate offenses.

Under the Blockburger test an offense is not a lesser included offense

of another if "each [statutory] provision requires proof of a fact which the other

does not."  Blockburger, 284 U.S. at 304; Davenport, 519 F.3d at 943.  The

Blockburger analysis focuses on the statutory elements of the offense and does not

consider the particular evidence to be presented at trial.  See Overton, 572 F.3d at

691; United States v. Williams, 291 F.3d 1180, 1187 (9th Cir. 2002).

Defendant is incorrect in his application of the Blockburger test to 18

U.S.C. § 1591.  Subsections 1591(a)(1) and 1591(a)(2) each require "proof of a

fact which the other does not."  Blockburger, 284 U.S. at 304.  Subsection

1591(a)(1) requires proof that a defendant recruited, enticed, harbored, transported,

provided, or obtained a person for commercial sex, while subsection 1591(a)(2)

does not require proof of such element.  See 18 U.S.C. § 1591(a)(1), (2).

Subsection 1591(a)(2) requires that a defendant benefit financially from a venture

which recruited, enticed, harbored, transported, provided, or obtained a person for

commercial sex, while subsection 1591(a)(1) does not require proof of such

element.  See id. § 1591(a)(2).  Although a defendant's own conduct may

constitute such a venture, subsection 1591(a)(2) does not require that a venture be

established from a defendant's own conduct.  See Davenport, 519 F.3d at 945.  As

the Ninth Circuit explained in Overton, "it matters not that there is 'substantial

overlap' in the evidence used to prove the two offenses, so long as they involve

different statutory elements."  See Overton, 573 F.3d at 692.  Accordingly, under

the Blockburger test, because each provision requires proof of a fact that the other

does not, subsection 1591(a)(1) is not a lesser included offense of subsection

1591(a)(2).

      As to Congressional intent, the Court looks at whether Congress

intended to authorize multiple punishments for violations of subsections 1591(a)(1)

and (a)(2).  Id. at 691. "[T]he proper inquiry involves the determination of '[w]hat

Congress has made the allowable unit of prosecution.'"  Keen, 104 F.3d at 1118

(quoting United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221 (1952)).

The Ninth Circuit instructs courts to look at several factors to determine Congress'

intent, including the language of the statute, its legislative history[5] and statutory

context, the type of conduct proscribed, and the "appropriateness of multiple

punishment for the conduct charged in the indictment."  United States v. Arreola,

467 F.3d 1153, 1157 (9th Cir. 2006).

---

[5] The legislative history of 18 U.S.C. § 1591 is not instructive. See H.R.
Rep. No. 108-66 (2003); H.R. Rep. No. 108-264 (2003).

Defendant submits that, with regard to subsections 1591(a)(1) and (a)(2), section 1591 is not distinguishable from the federal car jacking statute, 18 U.S.C. § 2119, which the Supreme Court construed in <u>Jones v. United States</u>, 516 U.S. 227 (1999), as defining separate offenses, or from the federal assault statute, 18 U.S.C. § 111, which the Ninth Circuit construed as defining separate offenses in <u>United States v. Chapman</u>, 528 F.3d 1215 (9th Cir. 2008).  (Reply to Second Mot. at 2 n.1.)  Defendant argues that subsections 1591(a)(1) and (a)(2) define separate elements of distinct offenses, not alternative means of a single offense.

Looking at the <u>Arreola</u> factors, a court first looks at the language of the statute itself.  As described above, Subsections 1591(a)(1) and (a)(2) are listed under the same provision, although each has its own indented paragraph, the structure of subsection 1591(a) indicates that Congress did not intend them to create two separate offenses but one offense with two alternate means of violation.  Specifically, subsections 1591(a)(1) and (a)(2) each share an opening element—"whoever knowingly"—and a closing clause with both another element—knowledge of force, fraud, or coercion or a victim's under-age status—and a provision of punishment as provided by subsection 1591(b).  <u>See</u> 18 U.S.C. § 1591(a).  Further, subsection 1591(a)(2) relies upon the element defined in subsection 1591(a)(1).  <u>See</u> 18 U.S.C. 1591(a)(2)("benefits, financially or by

receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)[]"). Congress clearly did not provide each subsection with its own completely self-contained provision as Congress did in 18 U.S.C. 2251. See 18 U.S.C. § 2251; Keen, 104 F.3d at 1120 ("'When Congress wishes to make each act or unit a separate crime it knows how to do so, as it demonstrated in the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, which specifically define each mailing or transmission as an offense.'" (quoting United States v. Pelusio, 725 F.2d 161, 169 (2d Cir. 1983))).

Further, the Ninth Circuit in Arreola found that where punishment did not depend on the statutory provisions in question, the provisions did not create two separate offenses. Arreola, 467 F.3d at 1157. Here, the punishment associated with a violation of section 1591(a) does not vary according to whether the defendant violated the statute by recruiting, enticing, harboring, transporting, providing, or obtaining a person for commercial sex, subsection 1591(a)(1), or by benefitting financially from a venture that committed such acts, subsection 1591(a)(2). See 18 U.S.C. § 1591(b) (providing the penalty provisions for section 1591).

The fact that section 1591's provision of punishment does not vary according to whether Defendant violated the statute through subsection 1591 (a)(1)

or (a)(2) is also contrary to Defendant's assertion that section 1591 should be construed as providing separate offenses as was 18 U.S.C. § 111 in <u>Chapman</u>.   In <u>Chapman</u>, the court held that section 111 defines three separate offenses: "(1) assaults that do not involve physical contact (punishable up to one year), (2) assaults that do involve physical contact (punishable up to eight years), and (3) assaults that involve a deadly or dangerous weapon or bodily injury (punishable by up to twenty years)." <u>Chapman</u>, 528 F.3d at 1219 (applying 18 U.S.C. § 111 (effective through Jan. 6, 2008)).  The <u>Chapman</u> court cited <u>Jones</u>, the other case on which Defendant relies, in finding that where a statute sets out separate punishment clauses, each adding further elements to the crime, the punishment clauses constitute separate and distinct criminal offenses, rather than one offense with different punishments.  <u>Id.</u> at 1218 (citing <u>Jones</u>, 526 U.S. at 252).

Here, the punishment clauses—1591(b)(1) and (b)(2)—are not argued by Defendant to create two separate offenses and section 1591 punishment associated with a violation of subsection 1591(a) does not vary according to whether the defendant violated subsection 1591(a)(1) or (a)(2).  Therefore, Defendant's assertion that <u>Chapman</u> and <u>Jones</u> are parallel is incorrect and the punishment provided by section 1591 lends support for the Government's proposition that Congress created only one offense.

However, in the instant case, the next factor of "the type of conduct proscribed," Arreola, 467 F.3d at 1157, could be construed to lend support to finding separate offenses.  Arreola instructs that courts should consider "whether the statute proscribes 'distinctly different kinds of conduct,' or whether the proscribed conduct is 'regarded as [falling] within the conventional understanding' of one crime." Id. at 1159.  Here, subsection 1591(a)(1) proscribes actively engaging a person in commercial sex, and subsection 1591(a)(2) proscribes a distinctly different kind of conduct, namely, benefitting financially from a venture that itself actively engaged the person in commercial sex.  See 18 U.S.C. § 1591(a)(1), (2).

Nonetheless, the last factor, "appropriateness of multiple punishment for the conduct in the indictment," Arreola, 467 F.3d at 1157, weighs clearly in favor of viewing subsections 1591(a)(1) and (a)(2) as providing for alternate means of committing one offense as opposed to creating two separate offenses.  The Ninth Circuit in Keen stated that absent clear Congressional intent to "impose cumulative punishments upon [a defendant][] . . . the rule of lenity [compels a court] to hold that imposition of consecutive sentences  . . . was error." Keen, 104 F.3d at 1119 (internal quotation marks omitted).  If subsections 1591 (a)(1) and (a)(2) were to be viewed as separate offenses, then a pimp found to be in violation

of subsection 1591(a)(1) by engaging a victim in commercial sex in violation of

the statute always would also be subject to penalties provided by subsection (a)(2)

by benefitting financially from the same crime as <u>commercial sex</u> is always for the

purpose of financial benefit.   <u>See</u> <u>also</u> <u>United States v. UCO Oil Co.</u>, 546 F.2d

833, 837 (9th Cir. 1976) (citing <u>Bell v. United States</u>, 349 U.S. 81 (1955), which

"laid down a presumption against construing statutes so as to lead to multiple

punishment.").  For all the reasons above, the Court finds that Congress did not

intend the subsections 1591(a)(1) and (a)(2) to create two separate offenses such

that a defendant could be penalized multiple times for the same conduct but instead

intended to provide two alternate means of committing the same offense.

Because subsections 1591(a)(1) and (a)(2) provide for two separate

means of violating the same statute, rather than for two separate offenses based on

the same conduct, the Fifth Amendment's Double Jeopardy Clause prohibits

imposition of punishment for both (a)(1) and (a)(2) counts.  However, the Fifth

Amendment's Double Jeopardy Clause protects against being punished twice for a

single offense, <u>Davenport</u>, 519 F.3d at 943,"[w]here there has been no prior

conviction or acquittal, the Double Jeopardy Clause does not protect against

simultaneous prosecutions for the same offense, so long as no more than one

punishment is eventually imposed."  <u>United States v. Josephberg</u>, 459 F.3d 350,

26

355 (2d Cir. 2006); see also Ohio v. Johnson, 467 U.S. 493, 500 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.").

A court may redress multiplicity in an indictment by dismissal of multiplicitous counts or entry of an order directing the government to elect under which counts it will proceed so long as there is no improper amendment to the indictment.  United States v. Aguilar, 756 F.2d 1418, 1423 (9th Cir. 1985); Johnson, 130 F.3d at 1426 ("[a] decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court" (citing United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990) and United States v. Phillips, 962 F. Supp. 200, 201 (D.D.C. 1997)).  A court may also choose to have all counts proceed to trial and vacate one of the multiplicitous convictions prior to sentencing.  United States v. Hector, 577 F.3d 1099, 1101–1103 (9th Cir. 2009).

Here, the Government concedes that the Court should not impose a sentence on any two multiplicitous counts of conviction.  (Opp'n to Second Mot. at 2.)  However, the Government opposes Defendant's motion to dismiss the Counts

before trial and argues that vacation of the multiplicitous counts before sentencing

provides the appropriate remedy.  (Id.)  Defendant suggests that having more

counts would prejudice him by suggesting to the jury that he has committed more

crimes.  (Reply to Second Mot. at 4.)  In support, Defendant cites the Tenth

Circuit's decision in United States v. Johnson, 130 F.3d 1420 (10th Cir. 1997),

where the court stated:

> The risk of a trial court not requiring pretrial election is that it "may
> falsely suggest to a jury that a defendant has committed not one but
> several crimes." United States v. Duncan, 850 F.2d 1104, 1108 n. 4
> (6th Cir. 1988); see also United States v. Marquardt, 786 F.2d 771,
> 778 (7th Cir. 1986) (multiple indictments create the impression of
> more criminal activity than in fact occurred). "Once such a message is
> conveyed to the jury, the risk increases that the jury will be diverted
> from a careful analysis of the conduct at issue," and will reach a
> compromise verdict or assume the defendant is guilty on at least some
> of the charges. United States v. Clarridge, 811 F. Supp. 697, 702
> (D.D.C. 1992).

(Id. (citing Johnson, 130 F.3d at 1426.).)

As the Government contends, the Supreme Court has recognized that

"[w]hether to prosecute and what charge to file or bring before a grand jury are

decisions that generally rest in the prosecutor's discretion." United States v.

Batchelder, 442 U.S. 114, 124 (1979).  In fact, the Supreme Court has held that so

long as sufficient evidence supports the charges, "there can be no impropriety" in

charging multiplicitous counts in an indictment.  Ball v. United States, 470 U.S.

856, 860 n.8 (1985).  The Court notes that the evidence that the Government

intends to present in this case, if taken as true, would support convictions for

violations of both subsections 1591(a)(1) and (a)(2).

Additionally, in the context of greater and lesser included offenses,

the Ninth Circuit has instructed that "[p]rosecutors should not be discouraged from

charging defendants with greater and lesser included offenses in separate counts

under the same indictment."  United States v. Jose, 425 F.3d 1237, 1247 (9th Cir.

2005).  Such a presentation may allow for providing a "cleaner package" to the

jury that can aid the jury in understanding the charges.  Id.

Importantly, here, the role of Defendant's co-defendant, Sharon

Nishimura, who according to the Government assisted Defendant with his

prostitution enterprise, may allow the jury to find that although Defendant was not

responsible for the actual recruiting, enticing, harboring, transporting, providing or

obtaining of some of the victims, and therefore did not violate subsection

1591(a)(1), that he benefitted financially from Nishimura's conduct, and therefore

violated subsection 1591(a)(2).  See Johnson, 130 F.3d at 1426 (affirming district

court's decision to proceed with multiplicitous charges where there was a

possibility, "albeit slim," that the jury would have acquitted on some of the

charges); see also United States v. Harwell, 426 F. Supp. 2d 1189, 1192 (D. Kan.

2006) (proceeding with multiplicitous counts when there was a possibility that the jury would acquit on one of the counts); Josephberg, 459 F.3d at 355 (2d Cir. 2006) (holding that district court's dismissal of possibly multiplicitous count before trial was premature).

Moreover, the Ninth Circuit has held that a defendant is not prejudiced where the Government would present the same evidence regardless of whether multiplicitous counts were dismissed before. See United States v. Matthews, 240 F.3d 806, 818 (9th Cir. 2000); United States v. Nash, 115 F.3d 1431, 1438 (9th Cir. 1997). Here, the Government would necessarily present the same evidence regardless of whether any of the multiplicitous counts were dismissed before trial. See Matthews, 240 F.3d at 818. In fact, the Government indicated at the hearing that if forced to elect among multiplicitous counts, it would supercede the Indictment and put the multiplicitous counts together as different ways in which Defendant may have violated the statute, which could serve to create confusion for the jury. Moreover, as described above, here it is possible that the jury could acquit on one of the multiplicitous counts, which provides further support for allowing all counts to go before the jury. Therefore, the Court finds that dismissal of the counts would not be an appropriate remedy.

The Court agrees with the Government that appropriate jury instructions would eliminate the risk of such prejudice.  (See Opp'n to Second Mot. at 12 (citing, e.g., United States v. Poepoe, 2007 WL 2122191, *5 (D. Haw. 2007) (unreported) (allowing the Government to proceed on multiplicitous indictment where prejudice of multiple counts would be cured by instructions); see also United States v. Platter, 435 F. Supp. 2d 913, 918 (N.D. Iowa 2006)).)

If Defendant is convicted of multiplicitous counts, the Court will vacate one of the multiplicitous counts for which Defendant is convicted before sentencing.  Overton, 573 F.3d at 691; United States v. Zalapa, 509 F.3d 1060, 1064 (9th Cir. 2007) ("it was plain error for the district court not to vacate one of the [multiplicitous] counts before entering judgment and sentencing [the defendant]"); United States v. Wiga, 662 F.2d 1325, 1335–1336 (9th Cir. 1981) ("agree[ing] … that if the prosecution fails to elect under which statute to proceed, and if convictions are rendered under both statutes, that the district court may exercise its discretion in deciding which conviction to vacate.").

Accordingly, the Court DENIES Defendant's Motion to Dismiss Counts 1, 3, 5, 7, 9, and 11 or Counts 2, 4, 6, 8, and 12, or Otherwise Redress the Multiplicity of these Counts.

III.   <u>Third Motion: Motion to Dismiss Counts 9 and 10 or Counts 11 and 12, or</u>
       <u>Otherwise Redress the Multiplicity of these Counts</u>

The arguments in regards to Defendant's Third Motion are

substantially similar to his Second Motion.  Count 9 charges Defendant with

violating section 1591(a)(1) by recruiting, enticing, harboring, transporting,

providing, or obtaining, A.N.H. <u>knowing that force, fraud, or coercion would be</u>

<u>used</u> to cause her to engage in commercial sex.  (Indictment at 7.)  Count 11

charges Defendant with violating section 1591(a)(1) by recruiting, enticing,

harboring, transporting, providing, or obtaining, A.N.H. <u>knowing that A.N.H. was</u>

<u>younger than 18</u> and would be caused to engage in commercial sex.  (<u>See</u> <u>id.</u>)

These Counts cover the same time period and depend upon the same evidence of

conduct.

Count 10 charges Defendant with violating section 1591(a)(2) by

benefitting financially from a venture that recruited, enticed, harbored, transported,

provided, or obtained, A.N.H. <u>knowing that force, fraud, or coercion would be</u>

<u>used</u> to cause her to engage in commercial sex.  (<u>See</u> <u>id.</u> at 8.)  Count 12 charges

Defendant with violating section 1591(a)(2) by benefitting financially from a

venture that recruited, enticed, harbored, transported, provided, or obtained,

A.N.H. <u>knowing that A.N.H. was younger than 18</u> and would be caused to engage in commercial sex.  (<u>See</u> <u>id.</u> at 9.)  As above, these Counts cover the same time period and depend upon the same evidence of conduct.

   With respect to these Counts, Defendant again asserts that the Counts are multiplicitous and that having more counts would prejudice him by suggesting to the jury that he has committed more crimes.  (Third Mot. at 7-9.)  In so arguing, Defendant concedes that a defendant may satisfy the section 1591 <u>mens rea</u> element by either "knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act" or by knowing that "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act" as these are simply alternatives ways of satisfying the single offense defined in section 1591.  (<u>See</u> <u>id.</u> at 3-6.)  In opposing Defendant's Third Motion, the Government agrees with Defendant that Counts 9 and 11 charge the same offense of violating section 1591(a)(1) by recruiting, enticing, harboring, transporting, providing, or obtaining, A.N.H. for commercial sex, and that Counts 10 and 12 charge the same offense of violating section 1591(a)(2) by benefitting financially from such conduct.  (Opp'n to Third Mot. at 2.)  As above, however, the

Government opposes Defendant's motion to dismiss the Counts before trial and asserts that vacation of the multiplicitous counts before sentencing provides the appropriate remedy.  (Id.)

Again, the Fifth Amendment's Double Jeopardy Clause prohibits being punished twice for a single offense, Davenport, 519 F.3d at 943, but so long as there is evidence to support the charges, "there can be no impropriety" in charging multiplicitous counts in an indictment.  Ball, 470 U.S. at 860 n.8.  As above, the Court notes that the evidence that the Government intends to present in this case, if taken as true, would support convictions for violations of both subsections 1591(a)(1) and (a)(2) by either force, fraud, or coercion or knowledge that A.N.H. had not attained the age of 18 years.

Here, as above, the Government would present the same evidence whether or not the multiplicitous counts are dismissed before trial because the counts cover the same period of time over which Defendant allegedly victimized A.N.H.  Therefore, regardless of the multiplicitous counts, Defendant's actions with regard to A.N.H.—whether involving his knowledge of force, fraud, or coercion, or her under-age status—would be "part of a 'single criminal episode'" and "inextricably intertwined" with the offense conduct.  United States v.

Williams, 989 F.2d 1061, 1071 (9th Cir. 1993).  Additionally, the jury could acquit Defendant on one of the multiplicitous counts by finding either that Defendant did not know that A.N.H. was younger than 18 but that he nevertheless used force, fraud, or coercion against her, or vice-versa.   Moreover, jury instructions would mitigate any risk of prejudice in the multiple count indictment.  See Bolt, 776 F.2d at 1467; Platter, 435 F. Supp. 2d 913.

For all the reasons above, the Court finds, as above, that vacating the multiplicitous convictions before sentencing is an appropriate remedy.  Matthews, 240 F.3d at 818; Nash, 115 F.3d at 1438.  Therefore, if the jury convicts Defendant on Counts 9 through 12, the Court will vacate Defendant's conviction for either Counts 9 or 11 and 10 or 12 before sentencing.   Hector, 577 F.3d at 1101–1103; Wiga, 662 F.2d at 1335–1336.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Counts 9 and 10 or Counts 11 and 12, or Otherwise Redress the Multiplicity of these Counts.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motions to dismiss the Second Superseding Indictment.  (Docs. ## 139-141.)   As indicated,

the Court will elect to vacate one of any two multiplicitous counts for which

Defendant is convicted before sentencing.

      IT IS SO ORDERED.

      DATED:  Honolulu, Hawaii, May 13, 2010.



_____
David Alan Ezra
United States District Judge

<u>United States v. King</u>, CR. NO. 09-00207 DAE; ORDER DENYING
DEFENDANT'S MOTIONS TO DISMISS COUNTS OF THE SECOND
SUPERSEDING INDICTMENT